## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RIGOBERTO SANDOVAL, | : | Civil Action |
| Individually and On Behalf of the | : | No. |
| NOVITEX ENTERPRISE SOLUTIONS | : | |
| RETIREMENT SAVINGS PLAN, | : | |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| vs. | : | |
| | : | JURY TRIAL REQUESTED |
| NOVITEX ENTERPRISE SOLUTIONS, INC., | : | |
| NOVITEX ENTERPRISE SOLUTIONS | : | |
| EMPLOYEE BENEFITS COMMITTEE | : | |
| and DOES NO. 1-10, Whose Names Are | : | |
| Currently Unknown, | : | |
| | : | |
| Defendants. | : | September 20, 2017 |

Plaintiff, Rigoberto Sandoval ("Plaintiff"), by and through his undersigned counsel, in support of this Complaint, hereby pleads and avers as follows:

## I.   INTRODUCTION

1.      Plaintiff, individually and on behalf of the Novitex Enterprise Solutions Retirement Savings Plan (the "Novitex Plan" or the "Plan"), brings this action under 29 U.S.C. § 1132 on behalf of the Plan against Defendants, Novitex Enterprise Solutions, Inc. ("Novitex"), Novitex Enterprise Solutions Employee Benefits Committee ("Benefits Committee"), and Does No. 1-10, who are members of the Benefits Committee and whose names are currently unknown (collectively, Defendants"), for breaches of fiduciary duty and other violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

2.      Defined contribution plans that are qualified as tax-deferred vehicles under Section 401 of the Internal Revenue Code, 26 U.S.C. §§ 401(a) and (k) (*i.e.,* 401(k) plans), have

become the primary form of retirement savings in the United States and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or under-performance of pension plan assets used to fund defined benefits, 401(k) plans operate in a manner in which participants bear the risk of high fees and investment under-performance.

3.      The importance of defined contribution plans to the United States retirement system has become increasingly pronounced, as employer-provided defined benefit ("DB") plans have become increasingly rare as an offered and meaningful employee benefit.

4.      The Plan is a significant and large 401(k) plan in terms of assets, with more than $157 million in assets as of December 31, 2015 (down from $172 million at the beginning of 2015) and more than 10,000 participants.  The marketplace for 401(k) retirement plan services is well established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.  Large defined contribution plans, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of 401(k) plans and the investment of 401(k) assets.  As fiduciaries to the Plan, Defendants are obligated to act for the exclusive benefit of participants, invest the assets of the Plan in a prudent fashion, and ensure that Plan expenses are fair and reasonable.  At all pertinent times, as explained below, Defendants: (a) were fiduciaries under ERISA; (b) breached their fiduciary duties under ERISA by failing to fully disclose to participants the expenses and risks of the Plan's investment options; (c) breached their fiduciary duties under ERISA by allowing unreasonable expenses to be charged to participants for administration of the Plan; and (d) breached their fiduciary duties

-2-

under ERISA by selecting and retaining opaque, high-cost, and poor-performing investments instead of other available and more prudent alternative investments.

5.      To remedy these fiduciary breaches and other violations of ERISA, Plaintiff, individually and on behalf of the Plan, brings this action under Section 502, 29 U.S.C. §1132, and Section 409 of ERISA, 29 U.S.C. §1109, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate and just under all of the circumstances.

6.      Plaintiff specifically brings this action on behalf of the Plan under ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, to recover the following relief:

- A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;

- A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants;

- Equitable, legal or remedial relief for all losses and/or compensatory damages;

- Attorneys' fees, costs and other recoverable expenses of litigation; and

- Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.   THE PARTIES

7.      Plaintiff is a current participant under 29 U.S.C. §1002(7) of the Novitex Plan, which is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34).  Plaintiff is a resident of Canoga Park, Los Angeles County, California.   The Plan is established and maintained under a written document in accordance with

29 U.S.C. §1102 and serves as a vehicle for retirement savings and to produce retirement income for Novitex employees.  Retirement income generated by the Plan depends upon contributions made on behalf of each employee by Novitex, deferrals of employee compensation and employer matching contributions, and from the performance of the Plan's investment options (net of fees and expenses).

8.      Defendant, Novitex, formerly known as Pitney Bowes Management Services, is a corporation organized and existing under the laws of Delaware, with its principal place of business at 300 First Stamford Place, 2nd Floor West, Stamford, Fairfield County, Connecticut. Novitex is the Plan sponsor, Plan Administrator, a designated fiduciary of the Plan, and a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.

9.      Defendant, the Benefits Committee, is a named fiduciary under the Plan, administers the Plan, and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002, 1102.  The Benefits Committee maintains its address at Novitex's headquarters in Stamford, Connecticut. The Benefits Committee and its members are appointed by Novitex to administer the Plan on Novitex's behalf.

10.      Defendants, Does Nos. 1-10, are the members of the Benefits Committee and, by virtue of their membership, are fiduciaries of the Plan.  Plaintiff is currently unable to determine the membership of the Benefits Committee despite reasonable and diligent efforts because it appears that the current membership of the Benefits Committee is not provided to the public.  As such, these defendants are named Does 1-10 as placeholders.  Plaintiff will move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend this Complaint to name the members of the Benefits Committee as defendants as soon as their identities are discovered.

### III.   JURISDICTION AND VENUE

11.     Plaintiff seeks relief on behalf of the Novitex Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under ERISA Section 409, 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA Section 502(e), 29 U.S.C. § 1132(e).

13.     Venue is proper in this judicial district pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391, because Defendants reside and/or conduct significant business activity in this judicial district.

### IV.   FACTUAL ALLEGATIONS

**A.     Background**

**1.     The Novitex Plan Management Structure**

14.     The Novitex Plan is a participant-directed plan in which participants direct their retirement assets into a pre-selected menu of investment offerings consisting of mutual funds and a stable-value fund.

15.     Pursuant to the Novitex Plan, which was established "to provide retirement income benefits" to Novitex employees, Novitex, as the named and designated plan administrator and fiduciary, appointed the Benefits Committee as the "governing body" authorized to administer the Plan.  The Plan document gives the Benefits Committee and Novitex the "sole discretion [to] determine and select the Funding Agent(s) and . . . the number and type of

Investment Funds to be offered under a Funding Arrangement."[1]  In addition, the Benefits Committee and Novitex "may, in [their] sole discretion, change the Plan's Investment Funds from time to time with respect to future periods," and "may in [their] sole discretion determine which Participants' Accounts are eligible to invest in any Investment Fund."

16.    In addition, the Benefits Committee and Novitex "[m]ay delegate any and all of his or her powers and duties hereunder to another person, persons, or entity) including, without limitation, the Plan's attorney, accountant, actuary, or any other person needed to administer the Plan."

17.    Indeed, Novitex and the Benefits Committee "have full power and authority to interpret the provisions of the Plan, to adopt rules and regulations for the administration of the Plan, and to interpret, alter, amend, or revoke any rules and regulations so adopted."

18.    The Benefits Committee includes a subsidiary "Investment Committee," which is responsible for, among other things, (a) establishing and maintaining an investment policy (the "Plan Investment Policy"), (b) selecting Plan investment options, (c) determining the default investment option for assets in the Plan that are without specific investment direction, (d) periodically evaluating the performance of the Plan's investment options and implementing changes when deemed necessary under the guidelines of the Plan's investment policy, (e) monitoring the Plan's investment, recordkeeping, and administrative expenses to ensure that they are reasonable, and (f) making changes where they are deemed necessary or desirable.

19.    Novitex and the Benefits Committee, as the Plan sponsor and Administrators,

---

[1]The Plan document defines "Funding Agent" as "any person or entity, including without limitation a mutual fund investment company, insurance company, bank or trust company . . . that offers one or more Investment Funds through a Funding Arrangement under the Plan."

retained UBS as the Plan's fiduciary investment advisor.  As the investment advisor, UBS is charged with (a) helping the Investment Committee adhere to a disciplined and rigorous oversight of the investment process, (b) producing and coordinating regular investment results and other reports on a regular basis for the Investment Committee, (c) assisting the Investment Committee in developing a Plan Investment Policy Statement and applying its guidelines in all investment decisions and updating the policy statement when warranted, (d) advising the Committee of new plan design options, (e) assisting the Investment Committee in reviewing plan pricing options every three to five years, and (f) assisting with participant investment education and communication.

20.     In addition, Novitex and the Benefits Committee, as the Plan sponsor and Administrators, retained Transamerica Retirement Solutions Corporation ("Transamerica") as the Plan Recordkeeper.  As the Plan Recordkeeper, Transamerica is charged with providing recordkeeping and administrative services for the Plan to its participants and beneficiaries, including (a) maintaining and updating individual account balances, (b) maintaining information regarding plan contributions, withdrawals, and distributions, (c) processing participant instructions, (d) providing participants with quarterly statements, (e) providing participants with sufficient information intended to allow them to make informed investment decisions, (f) reporting investment results on a regular basis, and (g) preparing Form 5500 and documentation required by the Plan auditors.

21.     The Plan's assets are, upon information and belief, held by State Street Bank and Trust Company ("SSBT") in trust pursuant to the Trust Agreement between Novitex and SSBT (the "Trust").  All investments and asset allocation are performed through that Trust.

-7-

2.    **The Plan's Investment Offerings**

22.    Aside from a stable value investment option and 12 target date funds, the Novitex Plan offers 12 core investment options [consisting of four bond funds, an institutional index fund, two large-cap funds, a small cap fund, a real estate fund, and an international fund], all of which are mutual funds:

| Asset Class | Investment Option |
|---|---|
| International-Term Bonds | Janus Flexible Bond T |
| Intermediate-Term Bonds | PIMCO Income Admin |
| Government Bonds | Vanguard Inflation-Protected Secs Adm |
| World/Foreign Bonds | Templeton Global Bond A |
| Large-Cap Value Stocks | American Beacon Bridgeway Large Cap Value Inv |
| Large-Cap Blend Stocks | Vanguard Institutional Index |
| Large-Cap Growth Stocks | T. Rowe Price Growth Stock Adv |
| Mid-Cap Value Stocks | JHancock Disciplined Value Mid Cap I |
| Mid-Cap Growth Stocks | T. Rowe Price Mid-Cap Growth Adv |
| Small-Cap Blend Stocks | Goldman Sachs Small Cap Value Inst |
| Real Estate | Prudential Global Real Estate Z |
| World/Foreign Stocks | American Funds Europacific Gr R4 |

23.    The 12 target date funds are all T. Rowe Price Retirement funds, which vary based on the target date of retirement.

24.    Finally, the Plan's stable income fund is the Prudential Guaranteed Income Stable Value, which guarantees a return of 1.35%.

**B.      Defendants' Breaches of Fiduciary Duty**

**1.      The Plan's Investment Options**

25.     As fiduciaries charged with selecting, monitoring, and removing the Plan's

investment options, Novitex and the Benefits Committee (including its subsidiary Investment

Committee), breached their duty of prudence by failing to monitor the Plan's investment options

to ensure that they were diversified and not excessively priced.

**a.      The Overconcentration Of Expensive, Actively-Managed
Variable Investment Options**

26.      With the exception of the Vanguard Institutional Index fund, all of the variable

investment options are actively managed.  And, with the exception of the Vanguard Institutional

Index fund (0.04% expense ratio)[2] and the actively-managed Vanguard Inflation-Protected

Securities fund (0.10% expense ratio), all are costly, with expense ratios ranging from 0.69% to

1.08%, with a mean of 0.78% and a median of 0.89%:

| **Investment Option** | **Expense Ratio**[3] |
|---|---|
| Janus Flexible Bond T | 0.69% |
| PIMCO Income Admin | 0.70% |
| Vanguard Inflation-Protected Secs Adm | 0.10% |
| Templeton Global Bond A | 0.93% |
| American Beacon Bridgeway Large Cap Value Inv | 1.08% |

---

[2]The "expense ratio" is the annual fees and expenses that the managers of the investment options charge their shareholders, expressed in the percentage of assets deducted annually.

[3]The expense ratios here are based on the Plan disclosures as of June 1, 2017.  Though the expense ratio of a mutual fund may vary year to year, the variance is almost always insignificant.

| | |
|---|---|
| Vanguard Institutional Index | 0.04% |
| T. Rowe Price Growth Stock Adv | 0.92% |
| JHancock Disciplined Value Mid Cap I | 0.86% |
| T. Rowe Price Mid-Cap Growth Adv | 1.03% |
| Goldman Sachs Small Cap Value Inst | 0.97% |
| Prudential Global Real Estate Z | 0.94% |
| American Funds Europacific Gr R4 | 0.85% |
| T. Rowe Price Retirement 2015 Adv | 0.87% |
| T. Rowe Price Retirement 2020 Adv | 0.91% |
| T. Rowe Price Retirement 2025 Adv | 0.94% |
| T. Rowe Price Retirement 2030 Adv | 0.97% |
| T. Rowe Price Retirement 2035 Adv | 0.99% |
| T. Rowe Price Retirement 2040 Adv | 1.01% |
| T. Rowe Price Retirement 2045 Adv | 1.01% |
| T. Rowe Price Retirement 2050 Adv | 1.01% |
| T. Rowe Price Retirement 2055 Adv | 1.01% |
| T. Rowe Price Retirement 2060 Adv | 1.01% |

**b.  The Failure To Use The Least Expensive Share Class**

27.     There is no distinction whatsoever, *other than price*, between the share classes for the same investment option.  The share class used is typically, if not always, dependent on the negotiating leverage of the investor; in other words, large institutional investors, such as the Plan, have significant amounts of monies to invest such that mutual fund managers will agree to lower fees/cheaper share classes for access to those Plan assets.  Despite the negotiating leverage based on its size, the Plan did not even utilize the cheapest share class for most of its investment options:

• **Janus Flexible Bond T:** the Plan invests in Class T shares, which have a 0.69% expense ratio, even though the fund offers Class I shares, which have a 0.56% expense ratio;

• **PIMCO Income Admin:** the Plan invests in Administrative Class shares, which have a 0.71% expense ratio, even though the fund offers Class I shares, which have a 0.56% expense ratio;

• **Templeton Global Bond A:** the Plan invests in Class A shares, which have a 0.93% expense ratio (with 0.25% attributed to 12b-1 fees), even though the fund offers R6 shares, which have a 0.52% expense ratio;

• **American Beacon Bridgeway Large Cap Value Inv:** the Plan invests in Investor Class shares, which have a 1.08% expense ratio (with no 12b-1 fees), even though the fund offers Institutional Class shares, which have a 0.52% expense ratio;

• **T. Rowe Price Growth Stock Advisor:** the Plan invests in Advisor Class shares, which have a 0.92% expense ratio (with 0.25% attributed to 12b-1 fees), even though the fund offers Investor Class shares, which have a 0.68% expense ratio (with no 12b-1 fees), as well as Institutional shares, which are lower still, with a 0.52% expense ratio;

• **John Hancock Disciplined Value Mid Cap I:** the Plan invests in I Class shares, which have a 0.86% expense ratio, even though the fund offers R6 shares, which have a 0.77% expense ratio;

• **T. Rowe Price Mid Cap Growth Advisor:** the Plan invests in Advisor Class

shares, which have a 1.03% expense ratio (with 0.25% attributed to 12b-1 fees),
even though the fund offers Investor Class shares, which have a 0.77% expense
ratio (with no 12b-1 fees), as well as Institutional shares, which are lower still,
with a 0.63% expense ratio;

• **Goldman Sachs Small Value Inst:** the Plan invests in Inst shares, which have a
0.97% expense ratio, even though the fund offers R6 shares, which have a 0.93%
expense ratio;

• **Prudential Global Real Estate Z:** the Plan invests in Z Class shares, which
have a 0.94% expense ratio, even though the fund offers Q Class shares, which
have been offered to retirement plans since 2011 and have a 0.79% expense ratio;

• **American Funds EuroPacific Growth R4:** the Plan invests in R4 shares,
which have a 0.85% expense ratio (with 0.25% attributable to 12b-1 fees), even
though the fund offers R6 shares, which have a 0.50% expense ratio; and

• **The T. Rowe Price Target Date Funds - Advisor Class:** all of the target date
investment options offered in the Plan are T. Rowe Retirement funds, Advisor
Class shares, which have an additional 0.25% 12b-1 fee, which the Investor Class
shares do not have.  As a result, the total annual fund operating expenses of the
Advisor Class shares is .025% more expensive than the Investor Class shares.
Indeed, as of 2015, the T. Rowe Retirement funds began offering Institutional
shares, with even lower expense ratios.  By way of example, the T. Rowe Price
Retirement 2055 Advisor Class offered in the Plan has an expense ratio of 1.01%;
in contrast, the Investor Class expense ratio is 0.76%, which is 0.25% lower than

the Advisor Class, while the Institutional Class has an expense ratio of 0.61%, or 0.40% lower than the Advisor Class.

28.     In addition, any revenue sharing paid from the investment options offered by the Plan to compensate for administrative, recordkeeping and other services was unreasonable on its face because a retirement plan with the assets of the Plan could have easily achieved lower total plan cost ("TPC") by adopting a zero revenue sharing menu of investment options and/or by properly achieving all available savings from revenue sharing by establishing a properly structured and designed plan expense account ("PEA") that credited all revenue sharing to the benefit of the Plan and equalized the amount of participant fees (both direct and indirect) paid by participants of the Plan.

### c. The Excessively Expensive Stable Value Investment Option

29.     The stable value investment option, the Prudential Guaranteed Income Fund, which guarantees a 1.50% return before the application of an extraordinary 0.40% "asset charge," provided only a net rate of return to 1.35% from January 2017 to June 1, 2017.  Meanwhile, the stable value industry benchmark, the Hueler Analytics Stable Value Pooled Fund Index, has a return of 1.82% from January 2017 to May 31, 2017.  The discrepancy is egregious in light of the Plan Investment Policy Statement, which specifically provides that, with respect to the stable value option, a review of applicable fees *and revenue sharing* (*i.e.*, the asset charge) shall be a selection criteria.

30.     Indeed, though the participant fee disclosures provide that the stable value investment option's credit rate "will never be less than the rate required by law," surprisingly, the credit rating is significantly lower than the Hueler rate (at almost 0.50%).  Since the Prudential

Guaranteed Income Fund appears to be a traditional Guaranteed Investment Contract issued by an insurance company (as opposed to a pooled or commingled stable value fund not subject to a single issuer credit risk), it is also surprising, and contrary to a reasonable investor's expectations, that this stable value fund does not offer a higher, rather than lower, crediting rate.

31.     Moreover, though the participant fee disclosures reveal the 0.40% asset charge, there is no affirmative confirmation that there are no other expense ratios related to the stable value investment option.

32.     In stark contrast and by way of example, the Vanguard Stable Value Fund, a pooled fund not subject to the single issuer risk like the Prudential Guaranteed Income Fund, has not only a lower expense ratio of 0.35%, but a substantially higher crediting rate of 1.86%.

**2.     The Plan's Investment Advisor and Recordkeeper**

33.     As fiduciaries charged with hiring, evaluating, and monitoring the Plan's service providers, including the compensation these service providers receive from the Plan in exchange for their services, Novitex and the Benefits Committee breached their fiduciary duty of prudence by retaining and agreeing and/or permitting Plan service provider, UBS, to be excessively compensated.

34.     UBS acts as the Plan's investment advisor, and is charged with providing objective investment advice for the benefit of the Plan and its participants and beneficiaries.  In addition to a $125,000 per annum base fee (which is excessive given the size of the Plan), UBS also receives "additional compensation from third parties in connection with assets in which clients' advisory accounts are invested" [and this compensation is in addition to the fee that a client pays for investment advisory services.  UBS may also receive compensation as a result of

"intercompany profit and servicing agreements."  In other words, UBS has a vested interest in obtaining more compensation from third parties and related entities, which may run counter to the interests of the Plan of choosing the most prudent investment options.

35.     In sum, UBS is a broker-dealer and investment advisor subject to multiple conflicts of interest which result in it deriving compensation from third parties related to the Plan's assets.  Novitex and the Benefits Committee breached their fiduciary duties by failing to monitor and ensure that UBS was paid reasonable compensation.

36.     Likewise, Transamerica was paid excessive recordkeeping and related fees in light of the assets and other characteristics of the Plan.  Novitex and the Benefits Committee breached their fiduciary duties by failing to monitor and ensure that Transamerica was paid reasonable compensation.

## V.   ERISA'S FIDUCIARY STANDARDS

37.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.  29 U.S.C. §1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)     for the exclusive purpose of
>
> > (i)     providing benefits to participants and their beneficiaries; and
> > (ii)    defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

38.     Under 29 U.S.C. 1103(c)(l), with certain exceptions not relevant here,

> the assets of a plan shall never inure to the benefit of any employer and
> shall be held for the exclusive purposes of providing benefits to participants
> in the plan and their beneficiaries and defraying reasonable expenses of
> administering the plan.

39.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in a plan.

40.     ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants.

41.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  29 U.S.C. §1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision
> of this part, a fiduciary with respect to a plan shall be liable for a breach
> of fiduciary responsibility of another fiduciary with respect to the same
> plan in the following circumstances:
>
> (1)     if he participates knowingly in, or knowingly undertakes
>         to conceal, an act or omission of such other fiduciary,
>         knowing such act or omission is a breach; or
>
> (2)     if, by his failure to comply with section 404(a)(l) in the
>         administration of his specific responsibilities which give
>         risk to his status as a fiduciary, he has enabled such other
>         fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary,
>         unless he makes reasonable efforts under the circumstances
>         to remedy the breach.

-16-

42.     29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action to

enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109.  Section 1109(a)

provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter
> shall be personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any profits of such
> fiduciary which have been made through use of assets of the plan by the fiduciary,
> and shall be subject to such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary.

43.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to

bring an action individually, on behalf of the Plan, to enforce a breaching fiduciary's liability to

the Plan under 29 U.S.C. § 1109(a).

## COUNT I
### (For Breach Of Fiduciary Duty)

44.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint

as if fully set forth herein.

45.     Defendants' conduct, as set forth above, violates their fiduciary duties under

ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A),(B) and (C), in that Defendants failed

and continue to fail to discharge their duties with respect to the Plan solely in the interest of the

Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to

participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the

Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that

a prudent man acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with

the documents and instruments governing the Plan.  In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

46.     As a direct result of Defendants' breaches of duties, Plaintiff and the Plan have suffered losses and damages.

47.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, Defendants are liable to restore to the Plan the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, attorneys' fees, costs and other recoverable expenses of litigation.

## COUNT II
### (In The Alternative, Liability For Knowing Breach Of Trust)

48.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

49.     In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a breach of trust.

50.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of poor and expensive

-18-

investment options that cannot be justified in light of the size of the Plan and the other expenses of the Plan, as well as other fiduciary breaches.

WHEREFORE, Plaintiff, on behalf of himself and the Plan, demands judgment against Defendants, for the following relief:

(a)     Declaratory and injunctive relief pursuant to ERISA § 502, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which Plaintiff and the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated: September 20, 2017         Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLP

/s/Laurie Rubinow
James E. Miller
Laurie Rubinow
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
         lrubinow@sfmslaw.com

Nathan Zipperian
Shepherd Finkelman Miller
 & Shah, LLP
1625 N. Commerce Pkwy., Suite 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
Email: nzipperian@sfmslaw.com

Ronald S. Kravitz
Kolin C. Tang
Shepherd Finkelman Miller
 & Shah, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com
         ktang@sfmslaw.com

Sahag Majarian
Law Offices of Sahag Majarian
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone: (818) 609-0807
Facsimile:  (818) 609-0892
Email: sahagii@aol.com

***Attorneys for Plaintiff
and the Plan***